STATE

v

Thomas E. PERKINS.

No. 81–586–C.A.

Supreme Court of Rhode Island.

June 8, 1983.

Dennis J. Roberts II, Atty. Gen., Joseph Ippolito, Jr., Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Counsel, Providence, for defendant.

OPINION

BEVILACQUA, Chief Justice.

The defendant, Thomas E. Perkins, was indicted by a grand jury on the 15th day of March, 1978. The indictment charged that he "did murder Cheryl A. Testa" in violation of G.L.1956 (1969 Reenactment) § 11–23–1.

On March 27, 1979, defendant's trial began before a jury in the Superior Court. At the close of all the evidence, defendant moved for judgment of acquittal of the charges. The trial justice, after viewing the evidence in the light most favorable to the state, granted the motion as to the first- and second-degree murder charges but found sufficient evidence to submit the case to the jury on a charge of involuntary manslaughter. The jury returned a verdict of guilty. The defendant moved for a new trial, contending that the evidence was insufficient to sustain the verdict. The trial justice granted the motion, and the matter was reassigned for trial.

On September 4, 1980, the case was ready for trial. Prior to commencement, defendant moved to dismiss, arguing that retrial constituted double jeopardy. The motion was denied and the trial began March 18, 1981. However, a mistrial was declared because of a police officer's improper testimony. The third trial began April 14, 1981. The defendant renewed his motion to dismiss, but it was denied. The jury found defendant guilty of involuntary manslaughter. The defendant made a motion for a new trial, which the trial justice denied.

The pertinent facts are as follows. On March 15, 1978, the Cranston police and rescue squad received a call from Perkins reporting that his girlfriend, Cheryl Testa, had been shot in their home. When the

rescue squad arrived, Testa had already died from a single gunshot wound to the head.

The medical examiner who conducted the autopsy officially deemed the manner of death undetermined because he could not say with any degree of certainty whether the death was a result of a suicide, an accident, or a homicide. The bullet's path of travel was such that the weapon could have been held by the victim or by someone else. The results of tests for fingerprints on the weapon and gunshot residue on the victim's and defendant's hands were inconclusive.

Cheryl Lancellotta and Manuel Gomes, two friends of defendant and the victim, testified about the events of March 15, 1978. The four played cards together in the kitchen of the Perkins home for several hours in the afternoon. At some point defendant left the room and returned with a gun. He proceeded to engage in a variation of Russian roulette, pointing the weapon once at Lancellotta and at Gomes and three times at Testa and pulling the trigger, after having emptied the gun of all but one bullet. The gun never went off. Testa appeared unconcerned, but at her friends' request she told defendant to put the gun away and he did.

Lancellotta and Gomes left at the end of the afternoon and returned in the evening to go out with defendant and Testa. Testa left the living room where the four were sitting and went to the bathroom to get ready. The defendant then left the room. Lancellotta and Gomes heard defendant call to Testa from the kitchen area, "What are you doing?" She replied, "What do you want to know for?" The defendant then repeated his question in a more insistent tone of voice and received no response. After a minute or two, Lancellotta and Gomes heard a gunshot.

When the two encountered defendant in the archway outside the bathroom, he blurted out, "She did it," "It went off," and "It was an accident." Lancellotta testified that defendant had one hand up and one

down by his left side but that she could not see if defendant was holding something. Gomes stated at trial that he saw defendant holding the gun, but he did not tell this to police in the statement he gave shortly after the incident.

After he called the police and the rescue squad, defendant told the two to leave and they did. The police arrived and seized the gun lying on the bathroom floor. The defendant initially told police the gun had gone off accidentally while he was cleaning it. He then stated that Testa had been playing with the gun.

On appeal, defendant challenges and assigns as error certain evidentiary and other rulings made by the trial justice. However, in light of the view we take with respect to one of the issues raised and the fact that that issue is dispositive of the case, it is unnecessary to consider the other errors assigned by defendant.

The sole issue that this court will consider is whether double jeopardy principles preclude the retrial of a defendant when that defendant moved for a new trial based on the legal insufficiency of the evidence and the trial justice granted the motion.

The defendant contends that although the trial justice's decision was rendered in response to a motion for a new trial, the substance of that decision reflects that defendant challenged and the trial justice ruled on the legal sufficiency of the evidence. Therefore, defendant argues, retrial is barred by the constitutional provision prohibiting double jeopardy pursuant to *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). We agree.

In *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the United States Supreme Court held that the double-jeopardy clause precludes retrial of an accused once the court finds that the evidence presented is legally insufficient to

support a verdict of guilty beyond a reasonable doubt. *Id.* at 17–18, 98 S.Ct. at 2150–51, 57 L.Ed.2d at 13–14.[1] A finding of legal insufficiency of the evidence is based on a conclusion that, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt, that is, the state failed as a matter of law to prove its case despite a fair opportunity to do so. *See Tibbs v. Florida,* 457 U.S. 31, 38, & n. 11, 102 S.Ct. 2211, 2216 & n. 11, 72 L.Ed.2d 652, 658 & n. 11 (1982); *Hudson v. Louisiana,* 450 U.S. 40, 43–44 & n. 5, 101 S.Ct. 970, 973 & n. 5, 67 L.Ed.2d 30, 33–34 & n. 5 (1981). To permit retrial after such a finding would afford the prosecution a second opportunity to convict by producing evidence it failed to supply in the first trial, thereby negating the purpose of the prohibition against double jeopardy. The *Burks* Court also stated that the fact that a finding of insufficient evidence is made in response to a motion for new trial makes no difference. A defendant does not waive his right to a judgment of acquittal by moving for a new trial. *Burks v. United States,* 437 U.S. at 17–18, 98 S.Ct. at 2150, 57 L.Ed.2d at 13. Therefore, because the double-jeopardy clause precludes a second trial once the court determines that the evidence is legally insufficient to sustain conviction, even if it is in response to a motion for a new trial, the appropriate remedy is direction of a judgment of acquittal. *See id.* at 18, 98 S.Ct. at 2150–51, 57 L.Ed.2d at 14.

█ A reversal based on the insufficiency of the evidence is to be distinguished from a reversal based on the court's conclusion that a guilty verdict is against the weight of the evidence. In considering whether the jury's verdict is against the evidence, the trial justice acts as a "thirteenth juror." He uses his independent judgment to weigh the evidence and assess the credibility of witnesses. If he concludes that in his opinion the evidence preponderates against the verdict, he may reverse and order a new trial. A determination based on the weight of the evidence does not indicate that a motion for judgment of acquittal should have been granted, and therefore retrial is not barred. *See Tibbs v. Florida,* 457 U.S. at 40–41, 102 S.Ct. at 2218–19, 72 L.Ed.2d at 661–62.

In the instant case, although the trial justice's determination was rendered in response to a motion for new trial, the substance of his decision indicates that the reversal of defendant's conviction was based on the insufficiency, not the weight, of the evidence. The trial justice at the conclusion of his decision ruled as follows:

"I am not convinced, after going over the evidence, that reasonable men could in fact find this defendant guilty of manslaughter. Based upon the evidence which transpired during the course of this trial, they had to speculate. There was not sufficient evidence by which they could exclude every reasonable hypothesis of innocence. A reasonable hypothesis was that this wound was self-inflicted based upon the testimony and the evidence which was elicited during the course of this trial.

"I, therefore, have no alternative but to grant the defendant's motion for a new trial and I hereby do."

The plain language of the trial justice's decision reflects that, relying on the evidence presented, no rational factfinder could find defendant guilty beyond a reasonable doubt. The trial justice concluded that as a matter of law the state had failed to sustain its burden of proof.

Although the trial justice initially distinguished between review of a motion for acquittal and review of a motion for a new

---

1. *Burks* was a federal prosecution, but in *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15, 21 (1978), the Court held that the double-jeopardy principles enunciated in *Burks* applied with equal force to the states. Also, the Court stated in *Burks* that it made no difference whether the trial or the appellate court determined that the evidence was insufficient, retrial is barred in both cases. *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9 (1978).

trial, the remainder of his decision employs the language of a judgment of acquittal instead of a determination that the evidence preponderates against the verdict. There is no language in the decision which indicates that the trial justice reviewed the evidence as a "thirteenth juror" and disagreed with the jury's resolution of conflicting testimony. There is no reference to weighing the evidence or the credibility of witnesses. Rather, the conclusion is that the evidence available simply was not sufficient to exclude every reasonable hypothesis except guilt and as a result could not sustain a conviction.

We therefore hold that the trial justice's decision granting a new trial after the first trial was based on the legal insufficiency of the evidence. Pursuant to *Burks, Hudson,* and *Tibbs,* retrial of this defendant is consequently prohibited by the double-jeopardy clause.

The defendant's appeal is sustained. The judgment of conviction against the defendant is vacated, and the Superior Court is directed to enter a judgment of acquittal. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.